# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

October 20, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SANDRA RIFFE, WIDOW OF
EDGAR RIFFE,
Claimant Below, Petitioner**

**vs.)   No. 13-0800** (BOR Appeal No. 2047830)
(Claim No. 880066810)

**WEST VIRGINIA OFFICE OF
INSURANCE COMMISSIONER,
Commissioner Below, Respondent**

**and**

**ROCKY I, INC.,
Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sandra Riffe, widow of Edgar Riffe, by Jerome J. McFadden, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The West Virginia Office of Insurance Commissioner, by Mary Rich Maloy, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 5, 2013, in which the Board affirmed an October 26, 2012, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's February 23, 2009, decision which denied a request for dependent's benefits. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these

1

reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Riffe, a coal miner, passed away on May 14, 2007. His widow alleges that occupational pneumoconiosis was a material, contributing factor in his death. On November 14, 2002, James Castle, M.D., performed a pulmonary evaluation of Mr. Riffe. Mr. Riffe reported that he smoked for fourteen years and was a coal miner for twenty-one years. Dr. Castle reviewed an October 28, 2002, x-ray and found that occupational pneumoconiosis was not present at that time. He concluded that there was no evidence of occupational pneumoconiosis by physical examination, radiographic evaluation, or physiological testing. He noted that Mr. Riffe had tobacco smoke induced chronic bronchitis.

A May 14, 2007, discharge summary from Welch Community Hospital by Majester Abdul-Jalil, M.D., indicates Mr. Riffe died as a result of hypoxia secondary to congestive heart failure exacerbated by chronic lung disease and possible hospital acquired pneumonia. He noted frequent hospitalizations for chronic lung disease and congestive heart failure as well as dementia, fluid overload, and occupational exposure with the potential for occupational pneumoconiosis. Dr. Abdul-Jalil stated that Mr. Riffe had chronic lung disease secondary to occupational exposure and a remote history of cigarette smoking. Mr. Riffe also had serial exacerbations of congestive heart failure which compromised his respiratory status.

An autopsy performed by Antonio Dy, M.D., revealed extensive bilateral bronchopneumonia in the lower left lobe of the left lung and the remainder of the right lung. It also showed simple occupational pneumoconiosis, visceral pleural fibrosis, dispersed dust presence, and scarring. The death certificate lists the cause of death as asystole with hypoxia, asphyxiation, and aspiration of gastric contents as secondary causes. Complete heart failure, edema, pulmonary congestion, severe chronic lung disease, and pneumonia were listed as other significant contributing factors. In an April 30, 2008, letter, Dr. Dy stated that the bronchial branches of Mr. Riffe's lungs were completely patent and there was no evidence of aspiration or mucosal changes following aspiration. He opined in a May 8, 2009, letter that Mr. Riffe died as a result of complications from his lung condition. He did not specify what the lung condition was. Mr. Riffe's treating physician, Mario Cardona, M.D., also opined that Mr. Riffe died as a result of complications of respiratory distress. He asserted that Mr. Riffe had occupational pneumoconiosis and that all of his breathing problems stemmed from the disease.

Joseph Tomashefski, M.D., reviewed medical records, the autopsy report, and slides of Mr. Riffe's lungs. He stated in an April 16, 2009, letter that he found emphysema and increased pigmented macrophages in the lung tissue. There was insignificant interstitial fibrosis. He noted areas of acute bronchopneumonia and evidence of aspergillus. There was vegetable material consistent with aspiration. He found one sub-millimeter sized black pigment deposit that is possibly consistent with coal macules. Other than the one miniscule pigment deposit, he found no definitive evidence of coal macules or nodular lesions. He opined that Mr. Riffe did not have occupational pneumoconiosis and that even if the one small macule found is considered to be simple occupational pneumoconiosis, it did not materially contribute to the death. He also opined

that coal dust exposure was not a cause or contributory factor in Mr. Riffe's emphysema, cardiac arrest, or fungal pneumonia.

The Occupational Pneumoconiosis Board testified in a hearing before the Office of Judges on September 7, 2011. Jack Kinder, M.D, opined on behalf of the Board that occupational pneumoconiosis was not a material, contributing factor in Mr. Riffe's death. He noted that Mr. Riffe worked in the coal mines for twenty-one years and smoked between one and two packs of cigarettes a day for thirty-four years. He also noted that Dr. Tomashefski reviewed the autopsy report and determined that Mr. Riffe likely had acute fungal pneumonia with mild to moderate emphysema and no evidence of occupational pneumoconiosis. Mr. Riffe suffered a gunshot wound to the chest in 1977 which decreased his right lung function by 60%. Dr. Kinder stated that prior to his death, Mr. Riffe had noncompliance with medical regime issues and a history of alcohol abuse. He testified that Mr. Riffe had multiple medical problems and that his death was not related to occupational pneumoconiosis. He opined that Dr. Dy's description of the pathology reports in the autopsy is lacking in detail and inconsistent with occupational pneumoconiosis. Dr. Kinder opined that Mr. Riffe died as the result of aspiration. The pulmonary condition did contribute to his overall decline in health in the two years prior to his death but he did not have occupational pneumoconiosis. Bradley Henry, M.D., also of the Occupational Pneumoconiosis Board, testified that though Dr. Dy diagnosed occupational pneumoconiosis in the autopsy report, he did not find macules or nodules associated with fibrosis as is necessary for a diagnosis of occupational pneumoconiosis. Dr. Dy's description of the lung tissue describes anthracosis, not occupational pneumoconiosis. Johnsey Leef, M.D., also of the Occupational Pneumoconiosis Board, concurred that Mr. Riffe did not have occupational pneumoconiosis.

The Occupational Pneumoconiosis Board testified in a second hearing before the Office of Judges on March 7, 2012, in order to consider Mrs. Riffe's August 5, 2010, award of federal black lung benefits. Dr. Kinder stated that West Virginia's standards for occupational pneumoconiosis benefits differ from the federal standards for black lung benefits. His opinion of the case was not changed by the findings and conclusions in Mrs. Riffe's federal black lung benefits case. He stated that Mr. Riffe's medical problems were very severe and that even if he did have simple occupational pneumoconiosis, it would not have materially contributed to his death. Mr. Riffe aspirated and that was not caused by pulmonary impairment. Dr. Henry concurred with Dr. Kinder and reiterated that he did not find even simple occupational pneumoconiosis in this case.

The claims administrator denied Mrs. Riffe's request for dependent's benefits on February 23, 2009. The decision was affirmed by the Office of Judges on October 26, 2012. The Office of Judges gave significant weight to the Occupational Pneumoconiosis Board's testimony as well as the report of Dr. Tomashefski. The Office of Judges found that Mr. Riffe had a moderate pulmonary impairment and pulmonary problems since at least 1998. However, as the Occupational Pneumoconiosis Board explained, a significant amount of the pulmonary problems are attributable to other physical conditions including emphysema caused by cigarette smoking, heart disease, evidence of strokes and hemorrhages, dementia, diabetes, alcohol abuse, and nicotine abuse. Dr. Tomashefski found that Mr. Riffe did not have occupational pneumoconiosis based upon lung tissue samples. Dr. Henry testified that Dr. Dy's autopsy report described

anthracosis and not occupational pneumoconiosis. Drs. Kinder and Henry stated that the lung problems derived from cardiac problems and cigarette smoking. The Office of Judges determined that the Occupational Pneumoconiosis Board's testimony and Dr. Tomashefski's report indicated that, at most, Mr. Riffe could have had simple occupational pneumoconiosis that would not have a been a material, contributing factor in his death. The Office of Judges also determined that the findings of Drs. Dy, Cardona, and Abdul-Jalil were not persuasive to establish that occupational pneumoconiosis was a material, contributing factor in Mr. Riffe's death. The Office of Judges concluded that it was questionable whether Mr. Riffe even had occupational pneumoconiosis.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order in its July 5, 2013, decision. On appeal, Mrs. Riffe argues that there is no basis to dispute that Mr. Riffe had a severe pulmonary disease that significantly contributed to his death. The West Virginia Office of the Insurance Commissioner asserts that the evidentiary record clearly shows that occupational pneumoconiosis did not materially contribute to Mr. Riffe's death. After review, this Court agrees with the reasoning of the Office of Judges and the conclusions of the Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: October 20, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II